35 F.3d 491
 147 L.R.R.M. (BNA) 2697, 129 Lab.Cas. P 11,218
 John D. NELSON, Regional Director of the Nineteenth Region
of the National Labor Relations Board, for and on
behalf of the NATIONAL LABOR RELATIONS
BOARD, Plaintiff-Appellee,
v.
PLUMBERS AND PIPEFITTERS LOCAL NO. 32; United Association
of Journeymen and Apprentices of the Plumbing and
Pipe Fitting Industry of the United
States and Canada, AFL-CIO,
Defendants-Appellants.
 No. 92-36543.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 16, 1993.
Decided Oct. 5, 1994.
 
 Hugh Hafer, Hafer, Price, Rinehart & Roblee, Seattle, WA, for defendants-appellants.
 Elinor L. Merberg, N.L.R.B., Washington, DC, for plaintiff-appellee.
 Appeal from the United States District Court for the Western District of Washington.
 Before: BROWNING, NORRIS, and O'SCANNLAIN, Circuit Judges.
 O'SCANNLAIN, Circuit Judge:
 
 
 1
 We must decide whether an outside union may continue picketing once an employer has agreed to end its support of a "sweetheart" union.
 
 
 2
 * Robert E. Bayley Construction, Inc. ("Bayley"), the general contractor for a project at Pier 69 in Seattle, had hired eight subcontractors on the site, including Olympic Plumbing and Heating ("Olympic"), a non-union mechanical contractor. Plumbers and Pipefitters Local No. 32 ("the Union") represents tradespeople in the Seattle area.
 
 
 3
 On March 10, 1992, the Union began picketing the Pier 69 site with signs stating, in substance, "Olympic Does Not Have a Contract with Local 32." Subsequently, on March 22, 1992, Olympic entered an agreement with the "Independent Union of Plumbers and Pipefitters" ("IUPP"). Shortly thereafter, in late March, Olympic voluntarily withdrew recognition when advised by the Regional Director of the National Labor Relations Board ("the Board" or "the NLRB") that recognition of the IUPP violated section 8(a)(2) of the National Labor Relations Act ("the NLRA" or "the Act"), 29 U.S.C. Sec. 158(a)(2).[1]
 
 
 4
 Nevertheless, on April 29, 1992, the Union charged Olympic with violating section 8(a)(2) of the Act by forcing its employees to join the IUPP. On May 4, 1992, the Union continued picketing with signs stating, in substance, "Olympic does not employ members of Local 32."
 
 
 5
 On May 21, 1992, Olympic entered into a settlement agreement with the Board and the Union. Under the settlement agreement, Olympic posted a notice stating that Olympic would among other things, not recognize, deal with, or assist the IUPP until the IUPP was certified by the Board. Olympic agreed to post the notice for sixty days.
 
 
 6
 On May 26, 1992, after observing a single Olympic employee using a neutral gate to enter the project, the Union expanded its picketing to the neutral gate. As a result, most workers refused to cross the picket line, causing a general work stoppage on the project.
 
 
 7
 On the very next day, Bayley charged the Union with violating section 8(b)(7)(C) of the Act,[2] alleging that the Union had started picketing with the intent to stop Bayley from doing business with Olympic.
 
 
 8
 On June 9, 1992, John D. Nelson, Regional Director of the 19th Region of the NLRB, filed a petition for injunctive relief under section 10(l ) of the NLRA to enjoin the Union's ongoing picketing. The petition asserted that the Union's picketing violated section 8(b)(7)(C) of the NLRA.
 
 
 9
 On July 1, 1992, the district court granted Nelson a temporary injunction. The Union timely filed this appeal.
 
 II
 
 10
 Under section 10(l ) of the Act, whenever it is charged that any person has engaged in an unfair labor practice under section 8(b)(7) of the Act, the regional attorney performs a preliminary investigation. 29 U.S.C. Sec. 160(l ). If the regional attorney determines that there is reasonable cause to believe that the charge is true and that a complaint should issue, he or she should petition the district court for appropriate injunctive relief. Id. However, section 10(l ) also provides that the regional attorney shall not apply for any restraining order under section 8(b)(7) if a charge has been filed against the employer under section 8(a)(2) and, after the preliminary investigation, the regional attorney "has reasonable cause to believe that such charge is true and that a complaint should issue." Id. Therefore, in order for the section 8(a)(2) proviso to preclude the issuance of an injunction, two requirements must be met. First, the regional attorney must have reasonable cause to believe that the employer has violated section 8(a)(2). Second, the regional attorney must have reasonable cause to believe that a complaint should issue.
 
 
 11
 The sole issue before this court is whether the section 8(a)(2) proviso prevented the district court from issuing an injunction under section 10(l ). In providing for mandatory injunctions under section 10(l ), "Congress recognized only one, limited situation in which it would be inappropriate to preliminarily enjoin under Section 10(l ) picketing allegedly violative of NLRA Section 8(b)(7)--namely, where the picketed employer is unlawfully recognizing or otherwise giving illegal assistance to another labor organization." Kobell v. United Food and Commercial Workers, 788 F.2d 189, 194-95 (3d Cir.1986). The narrow exception to section 10(l ) is "intended to apply in situations where the picketed employer has already sought to entrench a 'sweetheart' union in violation of the employees' right to free choice." Id. at 195.[3] The congressional reasoning was that without "a restriction to Section 10(l ), a 'sweetheart' union would enjoy a superior position over any competing union in obtaining the employees' support." Id.
 
 
 12
 In adopting the section 8(a)(2) proviso, Congress intended to create a level playing field for competing unions to vie for employees' support by providing that, when an employer has unlawfully recognized a sweetheart union, another union can engage in recognitional picketing that would otherwise be enjoined. This way, both unions have access to the workers.
 
 
 13
 In this case, recognitional picketing was inappropriate because Olympic had already ceased its recognition of the sweetheart union.[4] Indeed, Olympic had recognized the IUPP for less than ten days and then voluntarily withdrew recognition. The Union waited over one month after Olympic had withdrawn recognition before it resumed picketing.
 
 
 14
 Such picketing was not necessary to counterbalance the influence of an entrenched sweetheart union. The IUPP was neither entrenched nor at risk of becoming entrenched. The section 8(a)(2) proviso is a narrow exception. Here, we are invited to expand the narrow section 8(a)(2) exception to permit a union to engage in otherwise illegal picketing months after the alleged misconduct had voluntarily ceased. This we are not inclined to do.
 
 
 15
 The district court properly enjoined the Union's picketing under section 10(l ).
 
 
 16
 AFFIRMED.
 
 
 
 [1]
 Section 8(a)(2) reads in part: "It shall be an unfair labor practice for an employer ... to dominate or interfere with the formation or administration of any labor organization or contribute financial or other support to it...." 29 U.S.C. Sec. 158(a)(2)
 
 
 [2]
 Section 8(b)(7) reads in part: "It shall be an unfair labor practice for a labor organization or its agents ... to picket or cause to be picketed, or threaten to picket or cause to be picketed, any employer where an object thereof is forcing or requiring an employer to recognize or bargain with a labor organization as the representative of his employees, or forcing or requiring the employees of an employer to accept or select such labor organization as their collective bargaining representative...." 29 U.S.C. Sec. 158(b)(7)
 
 
 [3]
 The Third Circuit cited comments of Sen. Prouty, 105 Cong.Rec. S5961-62, reprinted in II Legislative History of the Labor Management Reporting and Disclosure Act of 1959 (II "Leg.Hist. LMRDA") at 1184-85 (1959); comments of Sen. Morse, 105 Cong.Rec. S5966, II Leg.Hist. LMRDA at 1189; comments of Mr. Previant, Special Counsel for the International Brotherhood of Teamsters, 105 Cong.Rec. H9693-9694, II Leg.Hist. LMRDA at 1493-94; comments of Sen. Barry Goldwater, 105 Cong.Rec. A8357-58, II Leg.Hist. LMRDA at 1828-29
 
 
 [4]
 Contrary to the Union's argument, it is not necessary for an employer to comply fully with a settlement of section 8(a)(2) charges and for the Board to dismiss formally its section 8(a)(2) complaint before the 8(a)(2) proviso ceases to prohibit an injunction under section 8(b)(7). See Kobell, 788 F.2d at 195 ("[T]he disability [imposed by the 8(a)(2) proviso] should terminate when the Regional Attorney no longer has reason to believe that the Section 8(a)(2) charge is 'true' and is no longer pursuing the complaint before the Board.")